**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:24 CR-00287-O |
| | § | |
| NATHAN REIS and | § | (01) |
| STEPHANIE HOCKRIDGE, a/k/a | § | (02) |
| STEPHANIE REIS, | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS' JOINT OPPOSED MOTION TO TRANSFER VENUE

COME NOW Defendants Nathan Reis and Stephanie Hockridge (collectively, the "Defendants") by and through their undersigned counsel, and hereby move this Court to transfer the venue in this action to the U.S. District for the District of Arizona, pursuant to Federal Rule of Criminal Procedure 21(a)–(b). As set forth below, the transfer of venue is in the interest of justice for the convenience to the parties, the witnesses, and their attorneys, as well as necessary in light of the demands of the Court's calendar, which otherwise threaten to deprive Defendant Nathan Reis of his constitutionally guaranteed right to counsel of choice and the Defendants of their constitutional rights to the effective assistance of counsel. In support of their motion, the Defendants respectfully submit the following:

### PROCEDURAL BACKGROUND

1.     On November 14, 2024, the Government filed its Sealed Indictment charging Defendants with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and four counts of wire fraud, in violation of 18 U.S.C. § 1343 (Doc. #3). The Court unsealed the Indictment on November 21, 2024 (Doc. #7).

1

2.      On November 26, 2024, this Court entered its Scheduling Order for Criminal Trial and Pretrial Order setting a trial date of January 6, 2025, with corresponding earlier pretrial deadlines. *See* Scheduling Order (Doc. #13) (the "Order"). Since that time, the Court granted the Defendants' prior request for a continuance such that trial is now set for April 21, 2025. *See* Order (Doc. #51).

3.      On March 14, 2025, Mr. Goebel, who was previously entered as counsel for Defendant Nathan Reis, filed a motion to withdraw in order to permit Kevin Chambers to substitute as counsel of record and trial counsel for Mr. Reis. *See* Mot. to Withdraw (Doc. #69). The Defendants contemporaneously filed a motion to continue the trial to permit Mr. Chambers, as well as Ms. Hockridge's existing counsel, the time necessary to prepare the Defendants' cases for trial. *See* Mot. to Continue (Doc. #70).

4.      On March 18, 2025, this Court entered an order denying both motions. The Court held that, although Mr. Reis was, as a "general rule[,] . . . entitled to replace counsel," "issues of fairness and the burden on the Court's calendar outweigh the Defendant's desire to change counsel." *See* Order (Doc. #71) at 3–4.

5.      As the Order noted, this Court "carries one of the highest case loads in the Northern District of Texas and already has trial settings through the end of the year," and "any additional continuance would place a significant burden on the Court's docket." *See id.* at 3 n.1, 5.

**F**ACTUAL **B**ACKGROUND

6.      At the time the acts in the Indictment are alleged to have occurred, both the Defendants resided within the District of Arizona. Indeed, neither Defendant was physically present in Texas during either of the two rounds of Paycheck Protection Act (PPP) funding that are the subject of the instant case.

2

7.      In addition, the overwhelming majority of the Government's potential fact witnesses reside outside this district. James Flores, Michael Cota, Vivian Arriaga, Adam Spencer, Kristin Spencer, Barry Calhoun, Aaron Frank, and Noah Spirakus resided in Arizona at the time of the alleged acts giving rise to the Indictment and, to the Defendants' knowledge, still reside there today. The attorneys of record for Flores, Cota, and Arriaga are all likewise located in Arizona. The Government's key witness, Eric Karnezis, resides in and is being prosecuted in the District of Oregon.

8.      In response to an inquiry from the Defendants, on March 19, 2025, the Government has indicated that three of the witnesses it intends to call reside in the Northern District of Texas, but the Defendants are unaware of who those witnesses might be.

9.      None of the witnesses that the Defendants anticipate calling at trial reside in the Northern District of Texas. At least five witnesses the Defendants anticipate calling to testify reside within the District of Arizona.

10.     Likewise, none of the Defendants' trial attorneys reside in the Northern District of Texas. Mr. Reis's original counsel Blake Goebel and his recently retained counsel of choice Kevin Chambers both reside in Washington, D.C., while Ms. Hockridge's counsel, Richard Finneran, resides in St. Louis, Missouri.[1]

11.     Similarly, all but one of the Government's attorneys reside outside the Northern District of Texas. Aside from AUSA Matthew Weybrecht, the Government attorneys entered in

---

[1]     Although Michael Heiskell and Gregg Gallian reside within the Northern District of Texas, both are entered as local counsel for Mr. Reis and Ms. Hockridge, respectively, pursuant to this Court's local rules requiring admission of local counsel, and are not expected to have any role at trial regardless of the ultimate venue. *See* N.D. Tex. L.R. 57.10.

this case (Philip Trout, Elizabeth Carr, Ryan McClaren, Steven Michaels, and Lindita Ciko-Torza)
are all based at the U.S. Department of Justice in Washington, D.C. ("Main Justice").

12.    Defendants currently reside in Puerto Rico. The Defendants welcomed their first
child in September 2024. As of the current trial date of April 21, 2025, their child will be less than
eight months old.

LEGAL STANDARDS

13.    Under Federal Rule of Criminal Procedure 21(a), the Court **must** transfer a case if
the prejudice from failing to grant a transfer is so great "that the defendant cannot obtain a fair and
impartial trial" in the district where the case was charged. Fed. R. Crim. P. 21(a) (emphasis added);
*see also United States v. Nat'l City Lines,* 7 F.R.D. 393, 397 (S.D. Cal. 1947) (noting the
"obligatoriness" of Rule 21(a)'s command "once a satisfactory showing is made").

14.    The Court may also transfer a case to another district "for the convenience of the
parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). That
may include transfer to a district where venue might not have been proper in the first instance. *See*
Fed. R. Crim. P. 21 advisory committee note (1966) ("Upon occasion . . . convenience of the
parties and witnesses and the interest of justice would best be served by trial in a district in which
no part of the offense was committed."); *United States v. Angiulo*, 497 F.2d 440, 441 (1st Cir.
1974) (affirming district courts' discretion to transfer a case to "a place away from the scene of
the charged events"); *United States v. Marcello*, 280 F. Supp. 510, 517–18 (E.D. La. 1968), *aff'd*
423 F.2d 993 (5th Cir. 1968) (approving transfer to Southern District of Texas despite lack of
factual connection to the transferee district).

15.    The purpose of Rule 21(b) was to eliminate the previously existing rule that "the
Government has the final choice of the jurisdiction where the prosecution should be conducted"

and to instead place the question of venue "in the discretion of the court." Fed. R. Crim. P. 21 advisory committee note (1944); *see also United States v. Guzman-Meza,* No. 4:17-CR-00198-SDJ-KPJ, 2020 WL 6482978, at *2 (E.D. Tex. June 30, 2020); *United States v. Campa,* 459 F.3d 1121, 1146 (11th Cir. 2006) (noting that district courts have substantial discretion with respect to the grant of a motion for change of venue).

16.    In considering whether to transfer venue, the Court must consider at least nine factors: (1) the residence of the Defendants; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; and (9) the docket condition of each district or division involved. *Id.* (citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964)).

DISCUSSION

17.    Under Federal Rule of Criminal Procedure 21, the interests of justice served by a transfer of venue outweigh any possible prejudice to the Government from such a transfer. Not only will a change of venue be of significantly increased convenience to the Defendants, the likely witnesses, and their attorneys, but it will also permit Mr. Reis to be represented at trial by his counsel of choice and for both Defendants' counsel to have adequate time to prepare for trial, without placing the burdens on the Court's calendar identified in its recent Order (Doc. #71).

18.    The Northern District of Texas, meanwhile, has only the most incidental connection to the allegations in this case. Although the Indictment alleges that a bank (which is not identified as a coconspirator) within the Northern District of Texas sent funds to the Defendants' alleged coconspirators "outside the state of Texas," Indictment (Doc. #3) ¶ 21, the vast majority of the

5

conduct at issue in the case is alleged to have occurred in Arizona. The fact that a wire transfer was initiated in a particular district is the sort of fact that would normally be addressed by a stipulation between the parties and which would therefore not require any witness from the initiating bank. Main Justice's reasons for shopping its prosecution to this Court, when venue would have been proper in other districts of far greater convenience to the parties, the potential witnesses in this case, and their attorneys, are unknown to the Defendants.

19.     As applied to the facts of this case, ***all*** of the enumerated factors the Court must consider (hereafter, the "*Platt* factors") either (1) favor a transfer to another district or (2) are neutral and therefore do not weigh against a transfer. *See United States v. Morris*, 176 F. Supp. 2d 668, 672 (N.D. Tex. 2001) ("Some of the factors are neutral. For example, the disruption to the defendant's business will be the same regardless of the location of the trial."). ***None*** of the factors favor venue remaining in this district.

20.     Five of the nine *Platt* factors are neutral and therefore do not weigh either for or against a transfer. The Defendants acknowledge that, as in *Morris*, the potential of disruption to the Defendants' business is not a distinguishing factor between this district and any other potential district. Likewise, the location of documents and records likely to be involved is a neutral factor, as all of the discovery disclosed by the Government has been produced in an electronic format. *Cf. United States v. McGraw*, No. 3:19-CR-225-S, 2020 WL 419731, at *2 n.1 (N.D. Tex. Jan. 24, 2020) ("The fact that other electronically-stored data may be located in other states is of little significance to the Court's analysis, because 'electronically-stored documents . . . can be easily transferred or made available in any location.'" (quoting *United States v. Patel*, No. 4:18CR127, 2018 WL 6274034, at *3 (E.D. Tex. Nov. 14, 2018) (cleaned up)).

21.     The location of counsel, the expense to the parties, and the relative accessibility of each district are likewise relatively neutral as between this district and the District of Arizona. Aside from Defendants' local counsel, who are not expected to take a role at trial in this case regardless of the venue, and AUSA Matthew Weybrecht, who the Defendants would not expect to remain involved in the case in the event of a transfer, all counsel of record in this case reside in locations that are a multi-hour plane ride from both this district and the District of Arizona.

22.     As set forth below, however, each of the other remaining four *Platt* factors strongly favors a transfer of venue to the District of Arizona.

### *The Residence of the Defendants*

23.     Although the Defendants both currently reside in Puerto Rico, the Defendants also own a condominium in Scottsdale, Arizona where they could stay during trial if the case were transferred to the District of Arizona. As a result, the District of Arizona is more convenient for the Defendants than the Northern District of Texas. That is especially true because the Defendants have a child who will not even be eight months old at the time of trial, and his needs will require that his parents be physically proximate to him during the trial. The location of events therefore weighs heavily in favor of a transfer to the District of Arizona.

### *The Location of Events*

24.     The acts alleged in the Indictment occurred almost exclusively in the District of Arizona when Defendants resided there full-time. By contrast, the only event alleged to have occurred in the Northern District of Texas is the transmission of four wires by a bank in this district (which is not alleged to be a coconspirator) to alleged coconspirators "outside of the state of Texas." Indictment (Doc. #3) ¶ 21. The location of events therefore weighs heavily in favor of a transfer to the District of Arizona.

### *The Location of Possible Witnesses*

25.     As detailed above, the vast majority of the potential witnesses in this case reside in the District of Arizona. *See supra* ¶¶ 7–9; *see also* Indictment (Doc. #3) ¶¶ 5, 9–13 (detailing residence of potential witnesses in Arizona). The Government has indicated that three of its witnesses reside in the Northern District of Texas, but it is not clear who those witnesses are. Thus, the location of possible witnesses weighs heavily in favor of a transfer to the District of Arizona.

### *Relative Docket Conditions*

26.     Based on the findings of this Court's recent Order (Doc. #71), the docket condition of this Division weighs heavily in favor of a transfer to the District of Arizona.

27.     As it stands, the crowded nature of this Court's docket has already impacted Mr. Reis's ability to secure his counsel of choice. *See* Order (Doc. #71) at 4.

28.     The demands of this Court's calendar have also impaired the Court's ability to grant the Defendants' counsel the time they require to be fully prepared for trial. *See* Order (Doc. #71) at 5.

29.     Courts in the District of Arizona, by contrast, have regularly granted defendants in similar cases trial continuances of lengths similar to or longer than that requested by the Defendants in this case. *See, e.g.*, *United States v. Jeremy*, No. CR-23-01586-PHX-SMB, Minute Entry (Doc. #30) (D. Ariz. Nov. 14, 2023) (granting continuance until two years after return of indictment due to case complexity and the government's production of over 150,000 discovery documents); *United States v. Sheafe*, No. CR16-438, 2018 WL 2179721, at *1 (D. Ariz. Apr. 27, 2018) (noting, in case where defendant was charged with bank fraud and conspiracy that initial trial date of June 21, 2016 had been continued to June 5, 2018); *United States v. Gentry*, No. CV–12–02210–PHX–SRB, 2013 WL 6795957, at *2 (D. Ariz. Dec. 20, 2013) (noting, in case where

defendant was indicted in May 2006 with securities fraud, wire fraud, and other white-collar crimes, that the court had granted "numerous continuances" and tried the case in September 2008).

30.     The relative docket conditions of this district and the District of Arizona therefore heavily favor a transfer to the District of Arizona, as it is likely that courts in that jurisdiction would have the capability of providing the Defendants' counsel of choice the time they require in order to adequately prepare the case for trial.

31.     Indeed, even if any of the *Platt* factors weighed against transfer (which they do not), transfer would still be required. The alternative of requiring trial to be held in this district on a date that, due to the Court's calendar, would deny Mr. Reis his counsel of choice and deny both Defendants' counsel the time required to provide them effective representation would cause "so great a prejudice" to the Defendants that transfer would be mandated by Rule 21(a)[2]—even if the factors this Court must consider under Rule 21(b) did not already uniformly point in that direction.

---

[2]     The Defendants acknowledge that Rule 21(a) has usually been applied in cases seeking transfer due to concerns that prejudicial pretrial publicity might taint the jury pool within a particular district. The plain language of Rule 21(a), however, is broad enough to encompass the type of prejudice the Defendants would suffer in this district, which is far more serious and much more difficult to cure than the potential risk of a tainted jury pool. *Compare United States v. Garcia-Flores*, 246 F.3d 451, 458 (5th Cir. 2001) (finding "that the district judge's thorough curative instruction [during voir dire] adequately ensured the integrity of the jury pool"), *United States v. Smith-Bowman*, 76 F.3d 634, 637 (5th Cir. 1996) (denying motion to transfer where, despite pretrial publicity, all ten prospective jurors indicated they could base their verdict solely on the evidence presented in court and had not formed an opinion on the defendant's guilt or innocence), *with Carlson v. Jess*, 526 F.3d 1018, 1027 (7th Cir. 2008) (finding Sixth Amendment violation where trial court "ignored the presumption in favor of [the petitioner's] counsel of choice" and denied petitioner's motion for continuance).

## CONCLUSION

32.    The Government cannot offer any serious reason why it would be preferable for this case to be tried in this Division, as opposed to the numerous other venues the Government could have selected when it brought its charges. This district is not only inconvenient for the Defendants, the vast majority of the potential witnesses, and their attorneys; it is inconvenient for most of the Government's own prosecutors, who are Main Justice lawyers.

33.    Especially given the burden that this case has already placed on this Court's already crowded docket, it is in the interest of justice and all affected parties, witnesses, and their attorneys for this case to be transferred to another, less overburdened district, where the Defendants' counsel of choice can be provided the time they require to be prepared to effectively represent their clients at trial.

34.    Prior to filing the instant motion, the undersigned conferred via email with AUSA Matthew Weybrecht, who confirmed that the Government opposed the Defendants' being granted the relief requested herein.

WHEREFORE Defendants Nathan Reis and Stephanie Hockridge respectfully request that the Court grant their motion to transfer this case to the U.S. District Court for the District of Arizona, and that it grant such other and further relief as the Court deems just and proper. A proposed order is filed herewith.

Dated: March 21, 2025                          Respectfully submitted,

                                               BOIES SCHILLER FLEXNER LLP

                                               */s/ Blake C. Goebel*
                                               BLAKE C. GOEBEL
                                               1401 New York Ave, NW
                                               Washington, DC 20005
                                               Tel: (202) 895-5248

Fax: (202) 237-6131
*bgoebel@bsfllp.com*

*Attorneys for Defendant Nathan Reis*

JOHNSON, VAUGH & HEISKELL

*/s/ Michael P. Heiskell*
Michael P. Heiskell, TX Bar: 09383700
5601 Bridge Street, Suite 220
Fort Worth, Texas 76112
Tel: (817) 457-2999
Fax: (817) 496-1102
*mheiskell@johnson-vaughn-heiskell.com*

*Attorneys for Defendant Nathan Reis*


BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*

*Attorneys for Defendant Stephanie Hockridge*

GALLIAN FIRM

*/s/ Gregg Gallian*
Gregg Gallian, TX Bar: 24085952
3500 Maple Avenue, Suite 1150
Dallas, Texas 75219
Tel: (214) 432-8860
Fax: (972) 433-5835
*gregg@gallianfirm.com*

*Attorneys for Defendant Stephanie Hockridge*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2025, a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's CM/ECF system.

Respectfully submitted,

*/s/  Richard Finneran*
RICHARD E. FINNERAN

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendants conferred via email with AUSA Matthew Weybrecht on March 19, 2025, who confirmed that the Government has no opposition to the Defendants being granted the relief requested herein.

*/s/  Richard Finneran*
RICHARD E. FINNERAN