UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHAN REIS (01) | No. 4:24-CR-287-O |

### **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS**

The United States, by and through the undersigned counsel, hereby opposes defendant Nathan Reis's Motion to Dismiss for Improper Venue, Dkt. 247, and Renewed Motion to Dismiss Count One based on alleged duplicity, Dkt. 250, and, in support, respectfully shows as follows:

**I.  Defendant's motions should be denied because they are untimely.**

The deadline for filing pretrial motions in this case was March 31, 2025. Dkt. 57. On April 5, 2025, this Court permitted Reis's counsel to withdraw, severed Reis's trial from the trial of his codefendant, and reset Reis's trial for August 2025. Dkt. 119. On April 6, 2025, Reis's new counsel filed an unopposed motion to extend the remaining pretrial deadlines that had not yet passed, including deadlines to designate experts, by sixteen weeks to correspond with the continuance of Reis's trial date. Dkt. 120. On April 7, 2025, this Court granted Reis's motion in part, extending the deadlines for expert designations and the meet-and-confer for the jury instructions but leaving in place deadlines from the previous scheduling order. *See* Dkt. 121 ("The terms of the Original Order shall continue to apply to the extent they are not inconsistent with this order.").

The Court did not set a new deadline for motions to dismiss, which Reis could have filed any time before the March 31, 2025, deadline. Because Reis filed his motion to dismiss for lack of venue four months after the deadline, it is untimely and should be denied.

Meanwhile, the Court already denied Defendants' joint motion to dismiss Count One for duplicity after finding that the Defendants failed to carry their burden. Dkt. 137. Reis seeks to renew his motion nearly three months later but once again fails to meet his burden and fails to show why the Court should reconsider its prior decision. The Court should therefore deny the motion to dismiss for alleged duplicity.

## II.    Defendant's motions should also be denied because the claims are premature.

Courts routinely deny pretrial motions based on duplicity and venue because they are premature. As to venue, "[w]hen considering a motion to dismiss based on improper venue, the Court looks at the allegations made in the indictment and takes all well-pleaded facts as true." *United States v. Sledziejowski*, No. 3:16-cr-101-B, 2018 WL 1870082, at *2 (N.D. Tex. Feb. 15, 2018) (brackets omitted). "[I]f there is a facially sufficient indictment, the Court cannot make venue determinations based on extrinsic evidence in deciding a pre-trial motion." *Id.* Thus, "as long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied." *Id.*

As to duplicity, "[t]he question of whether the evidence establishes the existence of a single conspiracy or multiple conspiracies is a question of fact for the jury," *United States v. Shows Urquidi*, 71 F.4th 357, 381 (5th Cir. 2023), and "[e]ven if the Court determines that the indictment is duplicitous because it charges two or more separate and

distinct offenses in one count . . . this flaw does not require dismissal of the indictment." *United States v. Simpson*, No. 3:09-CR-249-D(06), 2011 WL 2880885, at *5 (N.D. Tex. July 15, 2011) (quotation marks omitted) (emphasis omitted). "Rather, the Court may require the government to elect the single count on which it plans to rely, and as long as the evidence at trial is limited to only one of the charges in the duplicitous count, the defendant's challenge is likely to fail." *Id.* (quotation marks omitted). "[T]he risk that the jury will convict without unanimity on a single charge can be eliminated if the Court instructs the jury that it must find unanimously that the defendant was guilty with respect to at least one distinct act." *Id.* (quotation marks omitted); *see also United States v. Creech*, 408 F.3d 264, 268 (5th Cir. 2005) ("In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability.").

Here, the superseding indictment alleges that Defendant's scheme involved transactions with Lender-2, located in Bedford, Texas, and Bank-1, located in Happy, Texas. Dkt. 163 at 2-3. Further, the Count One wire fraud conspiracy alleges that Defendant's crime occurred "in the Fort Worth Division of the Northern District of Texas and elsewhere." Dkt. 163 at 4. The substantive wire fraud charges in Counts Two through Five similarly allege that Defendant's crime occurred in the Northern District of Texas. Dkt. 163 at 10. On its face, the superseding indictment properly alleges venue in the Northern District of Texas. Accordingly, the Court should deny Defendant's motions.

### III. The law and the facts support venue in the Northern District of Texas.

Defendant's Motion to Dismiss for Improper Venue is wrong on the law, because venue is established when a defendant reaches into a district to commit a crime, and the facts, because Defendant repeatedly reached into the Northern District of Texas as part of his scheme to defraud the PPP. "When an offense is begun in one district and completed in another, venue is proper in any district in which the offense was 'begun, continued, or completed." *United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009). "Venue can be based on evidence of any single act that initiated, perpetuated, or completed the crime, and circumstantial evidence suffices to establish venue." *Id.* (citation omitted). "In cases involving conspiracy offenses, venue is proper in any district where the agreement was formed or an overt act occurred." *Id.*

As to the nature of the overt act and whether it must be performed by a member of the conspiracy physically in the district where the defendant was indicted, the Fifth Circuit has observed:

> The act must occur subsequent to the formation of the conspiracy agreement and prior to or in completion of the conspiratorial objective. It also must have been done in furtherance of the accomplishment of that objective[.] No distinctions are drawn based on the importance of the act to the accomplishment of the objective or on the legality of the act. A simple and commonplace legal activity may be sufficient, even though the action may be one that would have been taken in any event even had there been no illegal purpose. **The act can be that of a single conspirator or even an innocent agent who is acting at his direction.** The other conspirators need not have counseled the commission of the act nor even have been aware that it was to be done.

*United States v. Perez*, 223 F. App'x 336, 340-41 (5th Cir. 2007) (quoting 4 LaFave, Israel & King, Criminal Procedure (2d Ed.1999), § 16.2(f) at 538) (emphasis added).

Contrary to Defendant's assertion that *Perez* is somehow an outlier, courts routinely find that venue has been established when a defendant reaches into a district to commit a crime there. For example, in cases involving the enticement of minors, venue is established in the district where the victims are located when defendants contact the victims over e-mail or the telephone in furtherance of the crime, regardless of where the defendants are located. *See United States v. Rounds*, 749 F.3d 326, 335-36 (5th Cir. 2014) (venue established in Western District of Texas when defendant, who was in Houston, communicated through phone calls and text messages with victim, who was in Odessa); *United States v. Pack*, 255 F. Supp. 3d 695, 699 (S.D. Tex. 2017) (venue established in Southern District of Texas when defendant, who was in San Antonio, communicated through e-mail and messaging application with federal agent, who was in Laredo and posing as a thirteen-year-old girl).

The calculus does not change when a defendant or his coconspirator reaches into a district to direct the actions of an innocent third party in furtherance of a conspiracy. As the Second Circuit has held, "When a conspirator uses a telephone call—by whomever initiated—to further a criminal scheme, the conspirator effectively propels not only his voice but the scheme itself beyond his own physical location into that of the person with whom he is speaking." *United States v. Rommy*, 506 F.3d 108, 122 (2d Cir. 2007). "The conspirator's commission of an overt act does not depend on whether the listener rather than the conspirator initiates the conversation." *Id.* "Nor does it matter whether the

listener is a confederate, an innocent third party, or an undercover agent." *Id.* "What matters is that the conspirator speaks, not to hear the sound of his own voice, but to communicate to his listener because he thinks that, by doing so, he furthers a conspiratorial goal." *Id.* "Thus, the overt act may properly be understood to have occurred at the site where the listener receives the conspirator's message." *Id.* The court concluded that the conspirator's "communication is a continuing act, supporting venue in the district of its initiation as well as the district of its receipt." *Id.*

    Here, Defendant and his coconspirators chose to do business in the Northern District of Texas by entering into the lender service provider agreement with Lender-2, which allowed Defendant to further the conspiracy by, among other things, processing fraudulent loans on behalf of Lender-2 and obtaining a percentage of the SBA fees paid to Lender-2 for those loans. Defendant and his coconspirators repeatedly reached into this district when they sent fraudulent PPP loans to Lender-2. Additionally, Defendant's and his coconspirators' criminal conduct caused Bank-1 to send proceeds of fraudulent PPP loans from this district. On top of all this, Defendant made communications in furtherance of the conspiracy while he was physically present in this district. The evidence at Defendant's trial will be more than sufficient to establish venue for the Count One conspiracy.[1]

---

[1] Confusingly, Defendant challenges venue only for Count One and not for the four substantive wire fraud counts. *See* Dkt. 247. The conduct described in those counts is also alleged as part of the Count One conspiracy. Dkt. 163 ¶¶ 17(d), (g)-(j). Defendant's claims concerning venue fail as to Count One and also as to the substantive counts.

To support his venue claims, Defendant cites *United States v. Wieschenberg*, 604 F.2d 326, 331 (5th Cir. 1979), for the proposition that, "'[f]or a conviction of conspiracy, there must be proof of . . . an overt act committed by *one of the coconspirators* in furtherance of the conspiracy.'" Dkt. 247 at 3 (emphasis in Defendant's motion). Defendant extrapolates from this holding, stretching the text to support his argument. But this case is consistent with the authority quoted above: By reaching into this district, Defendant and his coconspirators performed overt acts in furtherance of the conspiracy as if they were physically present in the Northern District of Texas. *See Rommy*, 506 F.3d at 122 ("[T]he conspirator avails himself of modern technology to commit at long distance the identical overt act that he would commit by being in the same room with a person and whispering a conspiracy-furthering message directly into his listener's ear.").

**IV.   Defendant's motion to dismiss based on duplicity is meritless.**

"An indictment may be duplicitous if it joins in a single count two or more distinct offenses." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991). "If an indictment is duplicitous and prejudice results, the conviction may be subject to reversal." *Id.* "[W]hen the indictment charges a conspiracy, it can allege in a single count a conspiracy to commit several crimes without being duplicitous because '[t]he conspiracy is the crime, and that is one, however diverse its objects.'" *Simpson*, 2011 WL 2880885, at *5 (quoting *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir. 1983)).

"In considering whether one or multiple conspiracies exist, the principal factors are (1) the existence of a common goal, (2) the nature of the scheme, and (3) overlapping of participants in the various dealings." *United States v. Faulkner*, 17 F.3d 745, 761 (5th

Cir. 1994). "Because one conspiracy may have many illegal objectives, it will necessarily involve a number of sub-agreements to commit each of these specified objectives." *Id.* at 760. "Some members may concur in only some of the many objectives, yet they are liable for all because there is but one scheme, one enterprise, one conspiratorial web." *Id.*; *see United States v. Calderon*, 127 F.3d 1314, 1329 (11th Cir. 1997) ("It is often possible . . . to divide a single conspiracy into sub-agreements. This does not, however, mean that more than one conspiracy exists.") (ellipsis omitted).

      Defendant's duplicity and multiple conspiracy claims are flawed for several reasons. First, Defendant's portrayal of the scheme as occurring in demarcated episodes with clearly defined bookends is inconsistent with the evidence. Throughout the rounds of PPP lending, Defendant's scheme involved his and his coconspirators' theft of the same funds (PPP loan proceeds), many of the same coconspirators (Defendant himself, as well as coconspirators such as Stephanie Hockridge, James Flores, Michael Cota, Vivian Arriaga, and Coconspirator-2), and submission of the same types of false and fabricated financial and tax documents. Indeed, in some instances, they were the exact same falsified documents used to support loans in 2020 and 2021. The conspiracy also used Lender-1 in both 2020 and 2021. And the government will prove at Defendant's trial, as it proved at Hockridge's trial, that both Defendant and Hockridge were involved in the conspiracy throughout 2020 and 2021, not one or the other in distinct "phases" as Defendant suggests.

      Defendant also exaggerates the differences in the PPP between 2020 and 2021. While there were some changes that allowed Defendant's conspiracy to be more

successful in 2021, the basic tenets remained the same. The program was designed to help qualified applicants meet their payroll needs if they demonstrated eligibility through information and supporting documents, which were required to be truthful and accurate. Indeed, the PPP allowed borrowers who did not apply in 2020 to get a "first draw" in the 2021 phase and then come back and get a "second draw" in the same phase. In addition, during the period after the first round of lending, Defendant and his coconspirators did not sit idly by but instead prepared to commit more fraud during the second round. The evidence will show—as it did at Hockridge's trial—that Defendant and his coconspirators expected Congress to authorize another PPP round and took steps in anticipation of it, including by, among other things, negotiating a lender service provider agreement with Lender-1 in October 2020 and recruiting Eric Karnezis to work with Hockridge as part of VIPPP in December 2020. That Defendant's scheme evolved over time to more efficiently steal PPP funds does not mean that Count One is duplicitous or that he and his coconspirators committed multiple conspiracies. *See Faulkner*, 17 F.3d at 760. Count One correctly charges one conspiracy.

Nor is Count One unconstitutionally vague. It alleges a conspiracy to obtain fraudulent PPP funds and then describes the various methods Defendant and his coconspirators used to accomplish that goal, including through VIPPP, which it explicitly describes. Dkt. 163 at 6. "The purpose of an indictment is to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding." *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quotation marks omitted). "Thus,

an indictment is sufficient if it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *Id.* (quotation marks omitted). The superseding indictment against Defendant does exactly that, and Defendant's mere disagreement with the allegations in Count One is insufficient to establish a constitutional defect. *See United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023) ("[A] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.").

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's Motion to Dismiss for Improper Venue, Dkt. 247, and Motion to Dismiss based on duplicity. Dkt. 248.

Respectfully submitted,

| | |
|---|---|
| NANCY E. LARSON<br>ACTING UNITED STATES ATTORNEY | MARGARET A. MOESER<br>CHIEF, MONEY LAUNDERING & ASSET RECOVERY SECTION<br>Criminal Division, U.S. Department of Justice |
| *s/ Matthew Weybrecht*<br>MATTHEW WEYBRECHT<br>Assistant United States Attorney<br>State Bar of Texas No. 24102642<br>Telephone: 817-252-5200<br>Fax: 817-252-5455<br>matthew.weybrecht@usdoj.gov | *s/ Elizabeth R. Carr*<br>ELIZABETH R. CARR<br>RYAN MCLAREN<br>Trial Attorneys<br>Money Laundering and Asset Recovery Section<br>U.S. Department of Justice |
| LORINDA I. LARYEA<br>Acting Chief, Fraud Section | |

<u>s/ *Philip Trout*</u>
PHILIP TROUT
Acting Assistant Chief
Fraud Section
U.S. Department of Justice

CERTIFICATE OF SERVICE

      I hereby certify that on July 21, 2025, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney(s) of record who have consented in writing to accept this Notice as service of this document by electronic means.

                        *s/ Philip Trout*
                        PHILIP TROUT
                        Acting Assistant Chief