IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No.  4:24-CR-00287-O |
| | § | |
| NATHAN REIS          (01) | § | |
| STEPHANIE HOCKRIDGE  (02) | § | |
| | § | |
|   Defendants. | § | |

## OPINION & ORDER

Before the Court are the Garnishees' Answers to the Writs of Garnishment (ECF Nos. 397, 408); Defendants' Preliminary Objections (ECF Nos. 412, 418, 420, 423, 424); the Family Trustee's Petition to Modify and Objections to the Writs of Garnishment (ECF No. 428); the Government's Response (ECF No. 436); Defendants' Claims for Exemption and Requests for Hearing (ECF Nos. 430, 431, 435); the Government's Response to Defendants' Objections and Cross-Motion for Final Order of Garnishment (ECF No. 433); the Family Trustees' Response (ECF No. 443); Defendants' Responses (ECF Nos. 444, 445); and the Government's Reply (ECF No. 448). Having considered the Motions, briefing, objections, and applicable law, the Family Trustee's Petition to Modify and Defendants' Claims for Exemption and Requests for Hearing are **DENIED**. The Government's Cross-Motion for Final Order of Garnishment is **GRANTED**.

## I.      BACKGROUND

Defendants Nathan Reis and Stephanie Hockridge (collectively, "Defendants") were convicted for their role in a scheme to defraud the federal Paycheck Protection Program during a national crisis. This Court sentenced Defendants and ordered them to pay, jointly and severally, over $60 million in restitution.[1] To enforce the Court's restitution orders, the Government sought, obtained, and served writs

---

[1] *See* Judgments, ECF Nos. 362, 390.

of garnishment on SEI Private Trust Company (SEI) and Balentine, LLC (Balentine) (collectively, the "Garnishees") under the Federal Debt Collection Procedures Act (FDCPA).

The Garnishees filed answers to the writs and identified the substantial assets owned by Defendants or various trusts. As the Government has previously explained, these trusts were originally funded by Defendants' personal brokerage accounts.[2] From July to November 2022, Reis transferred over $46 million to the Nathan J Reis 2022 Irrevocable Trust and the Nathan J Reis Family Protection Trust (now named the Mint Legacy Trust and the Mint Family Trust), and Hockridge transferred over $29 million to the Stephanie Reis 2002 Irrevocable Trust and the Stephanie Reis Family Protection Trust (now named the Marietta Legacy Trust and the Marietta Family Trust) (collectively, the "Trusts").[3]

The Government served Defendants with the garnishments on December 17, 2025.[4] The Government also served  Billy Hockridge, Family Trustee for the Mint and Marietta Family Trusts and the Mint and Marietta Legacy Trusts ("Trustee"), on January 14, 2026.[5] After receiving notice of this garnishment action, Defendants each filed timely requests to transfer this proceeding to the District of Puerto Rico under 28 U.S.C. § 3004(b)(2),[6] which the Court denied.[7] Defendants filed objections to the garnishees' answers within 20 days of receiving the answers under 28 U.S.C § 3205(c)(5). The Trusts have not filed any objections.

## II.    LEGAL STANDARD

Federal law makes "a restitution order enforceable to the same extent as a tax lien." *United States v. Loftis*, 607 F.3d 173, 179 n.7 (5th Cir. 2010) (citing 18 U.S.C. § 3613(c)). The government may use the garnishment provisions of the FDCPA, 28 U.S.C. §§ 3001–3308, to collect a restitution obligation imposed by a judgment of conviction. *United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002).

---

[2] *See* Application 6–8, ECF No. 311.
[3] *Id.* at 6–7; *see also* Friedemann Aff. ¶¶ 10–11, ECF No. 311-3; Hockridge PSR ¶ 112, ECF No. 281-1.
[4] Certificate of Service, ECF No. 432.
[5] *Id.*
[6] ECF Nos. 403, 404.
[7] *See* Order, ECF No. 429.

Under the FDCPA, a court may garnish "property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a). "Property" for these purposes includes the present and future right to receive payments under a contract. *See* 28 U.S.C. § 3002(12).

Although federal law thus creates a lien on property, it is state law that "defines the property interests to which the lien attaches." *United States v. Elashi*, 789 F.3d 547, 548–49 (5th Cir. 2015); *See also United States v. Rodgers*, 461 U.S. 677, 683 (1983) ( "[I]t has long been an axiom of our tax collection scheme that, although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law."). In this context, federal law "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Craft*, 535 U.S. 274, 278 (2002) (internal citations and quotation marks omitted).

III.    ANALYSIS

A. Defendants' Objections

To begin, the Government asserts that Defendants' objections are not properly before the Court because they failed to submit the objections pursuant to 28 U.S.C. § 3202(d)'s procedural requirements, and that Defendants lack standing to object because they disclaimed the property interests held in the Trusts.[8] The FDCPA provides two statutory avenues for a defendant or interested party to object to a garnishment. 28 U.S.C. §§ 3202(d), 3205(c)(5). The Government argues that because none of Defendants' objections indicate whether the filing was served on the Garnishees, the objections should be rejected as procedurally deficient. The Court disagrees.

---

[8] Gov.'s Cross-Mot. Garnishment 8, 10, ECF No. 433.

3

Typically, under the FDCPA, an incomplete certificate of service does not bar a filing when the party has actual notice of the proceeding. *See United States v. Potts*, No. 4:09-CR-79-3, 2025 WL 3633213, at *6 (E.D. Va. Dec. 15, 2025). Moreover, the Court has discretion to extend time for service. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) (holding that courts have discretion to extend time for service, even if no good cause exists for the delay). Accordingly, the Court finds that the substance of Defendants' objections are properly before the Court.

The Government's standing argument similarly lacks merit. Because the Government seeks final writs that implicate Defendants as judgment debtors on the basis that Defendants have an interest in the Trusts' assets, Defendants have standing to litigate the issue. *See United States v. Latorre*, No. 3:12-CR-439-D 01, 2014 WL 3530830, at *2 n.4 (N.D. Tex. July 16, 2014) ("The United States also argues that Latorre does not have standing to object to the garnishment of the joint checking accounts because he has disclaimed any interest in the accounts. Because the court determines that the property in question is not exempt, the court assumes arguendo that Latorre has standing to object to the garnishment.").

## B. Nominee Status

Defendants' and the Trustee's objections to the writs of garnishment make essentially two arguments in opposition: (1) that Defendants' do not have any substantial nonexempt interests in the Trust assets;[9] and (2) that Defendants transfer of wealth to their trusts between 2022 and 2023 was "legal and commonplace estate planning."[10] The Government argues that the Trusts are simply Defendants' nominees because Defendants continue to enjoy the benefits of the property contained in the Trusts.[11] The Court agrees with the Government and finds that the Trusts hold Defendants' assets as Defendants' nominees.

---

[9] *See e.g.*, Def. Hockridge's Obj. 2–3, ECF No. 412; Def. Reis' Obj. 3–5, ECF No. 423.
[10] E.g., ECF No. 418 at 4.
[11] Gov.'s Mot. Garnishment 7–11, ECF No. 433.

A nominee is a person who holds legal title to a property for the benefit of another. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000). "Whether property is held by a [] nominee is determined by reference to state law, but when the law of the forum state does not set forth a test for determining whether an entity is the nominee of another, the court is 'guided by the common-law factors generally applied by federal courts to determine the existence of a nominee relationship.'" *United States v. Fields*, No. Civil Action No. 3:06CV697, 2009 WL 605775, at *5 (S.D. Miss. Mar. 9, 2009) (quoting *May v. United States*, No. 07–10531, 2007 WL 3287513, at *2 (11th Cir. Nov. 8, 2007)). The Trusts were created pursuant to Nevada law, so the Court looks there first.[12] Nevada law recognizes the nominee theory but "does not appear to address the factors necessary to determine whether an entity is the nominee of a taxpayer." *United States v. Steele*, No. 3:18-cv-00063, 2019 WL 2411422, at *9 (D. Nev. June 7, 2019), *aff'd*, 830 F. App'x 250 (9th Cir. 2020). Consequently, the Court looks to federal court nominee factors. *Id.*

In the Fifth Circuit, courts generally consider the following non-exclusive factors to establish nominee status: "(1) whether adequate consideration was given by the nominee for the property; (2) whether the property was placed in the name of the nominee in anticipation of a suit or occurrence of liabilities; (3) whether there is a close relationship between the transferor and the nominee; (4) whether the conveyance was recorded; (5) whether the transferor retained possession of the property; and (6) whether the transferor continued to enjoy the benefits of the property." *United States v. Dolenz*, No. 3-09-CV-1311-O-BD, 2011 WL 4351558, *2 (N.D. Tex. June 16, 2011) (citing *Oxford Cap. Corp.*, 211 F.3d at 284 n.1), *report and recommendation adopted*, No. 3:09-CV-1311-O, 2011 WL 4348295 (N.D. Tex. Sept. 15, 2011). At bottom, nominee status is determined by whether Defendants engaged in "a legal fiction' by placing title to property in the hands of a third party, while retaining some or all of the

---

[12] *See* Def. Reis' Resp. 10 n.12, ECF No. 445

benefits of actual ownership." *Ogle v. Cabelka*, No. 7:21-CV-00129-O-BP, 2023 WL 4980954, at *2 (N.D. Tex. July 17, 2023) (internal citation omitted).

First, the Government argues that the uncontested fact that the Trusts received no consideration for the assets that they received from Defendants supports its nominee theory.[13] Defendants respond that Nevada law does not require consideration for the transfer of assets to the trustees of an irrevocable trust.[14] Because consideration was not required for formation of the Trusts at issue, the Court finds that this the first factor weighs neutrally.

Second, the Government argues that the Trust assets were placed in the Trusts' name in anticipation of a suit or liabilities as evidenced by the names of Trusts[15] and the fact that Defendants' counsel had suggested the possibility of sequestering funds from Defendants' "estate planning that would be sufficient to satisfy any potential monetary liability under the Government's theory at the time."[16] Defendants respond that the Trusts were created and funded by November 2022 prior to Defendants' having an reason to suspect that would be subject to investigation or restitution.[17] The Court disagrees with Defendants.

"Having defrauded the government out of a significant sum of money, any reasonable person should have believed a criminal investigation would be possible." *United States v. Brantley*, Criminal Action No. 4:15-CR-0225-O, 2019 WL 8012585, at *5 (N.D. Tex. Nov. 8, 2019) (O'Connor, J.), *aff'd*, 816 F. App'x 934 (5th Cir. 2020). Regardless of Defendants' subjective intentions regarding estate planning, the Government has presented sufficient evidence that Defendants anticipated a criminal investigation as a result of the fraud they committed prior to the creation of the Trusts. Such anticipation

---

[13] Gov.'s Mot. Garnishment 13, ECF No. 433.
[14] *See e.g.* Def. Hockrige's Resp. 12, ECF No. 444.
[15] Two of the Trusts were originally named as the Reis and Hockridge "Family Protection Trust."
[16] Def. Hockridge's Obj. SEI's Answer 3, ECF No. 424.
[17] *See* Def. Ries's Resp. 16, ECF No. 445; Def. Hockrige's Resp. 12, ECF No. 444.

of investigation is necessarily accompanied by anticipation of the potential consequences of a criminal investigation, namely, restitution liability.

That Defendants were not necessarily facing restitution liability at the moment they transferred the assets into the Trusts does not negate the evidentiary significance of Defendants' anticipated liabilities. *Nassar Family Irrevocable Tr. v. United States*, No. 13 CIV. 5680 (ER), 2016 WL 5793737, at *9 (S.D.N.Y. Sept. 30, 2016). The fact remains that Defendants anticipated restitution liability and transferring their assets into the Trusts has insulated them from a number of future liabilities and could theoretically insulate them from restitution liability. *Id.* (finding that the defendant's transfer of property to a trust had insulated him from various liabilities including "his criminal restitution"). Accordingly, the Court finds that the third factor weighs in favor of the Trusts' nominee status.

With regard to the third factor, Defendants clearly have a close relationship with the Trusts. It is undisputed that both Defendants were—at one time or another—family trustees of the Trusts, that Hockridge is a trust beneficiary, and one of the current family trustees is Defendant Hockridge's father. *See United States v. Washington*, Civil Action No. H-09-3996, 2011 WL 3902737, at *19 (S.D. Tex. Sept. 6, 2011) (finding that the close relationship factor weighed in favor of nominee status because two of the five trust owners were defendant's children). Regardless of the scope of Defendants' authority over the Trusts, which Defendants argue was limited, Hockridge's status as beneficiary of two of the trusts combined with the close family ties is sufficient for this factor to weight in favor of nominee status. *See Nassar Fam. Irrev. Tr.*, 2016 WL 5793737, at *8 (finding the "fact that Nassar is both a beneficiary and trustee of the Trust" as "indicative of a close relationship" between them).

The Government argues that the fifth and sixth[18] factors, weigh heavily in favor of the Trusts' nominee status because Defendants' and their entities have been able to obtain and use millions of dollars

---

[18] The Government does not contest that the fourth factor weighs against nominee liability since the formation and funding of the trusts appears to have been recorded in accordance with applicable law.

from the Trusts for their benefit. Defendants attempt to explain away—but do not deny—the millions of dollars disbursed from the Trusts to pay for, amongst other things, Hockridge's "living space" and Defendants' legal fees.[19] The Government has presented sufficient evidence to show that Defendants effectively retained possession of the Trust assets; and that they continued to enjoy the benefits of the property.

Defendants and the Trustee argue extensively that the formation of the Trusts was in accordance with Nevada law and that the Trusts have operated in accordance with the applicable laws and the Trusts' instruments. But these arguments miss the central inquiry of whether a nominee relationship exists. The inquiry should be aimed at determining whether Defendants "exercised active or substantial control over the property." *United States v. Everseff*, No. 00-CV-06029 KAM, 2012 WL 1514860, at *10 (E.D.N.Y. Apr. 30, 2012), *aff'd*, 528 F. App'x 75 (2d Cir. 2013) (quoting *Richards v. United States (In re Richards)*, 231 B.R. 571, 579 (E.D.Pa.1999)). Compliance with certain rules does not negate the benefits Defendants received nor the control they exercised. *Nassar Fam. Irrev. Tr.*, 2016 WL 5793737, at *8 n.12 ("The critical issue in resolving a nominee . . . claim is not motive, but control." (citation modified)). Accordingly, the Court finds that the relationship between the Defendants and their Trusts is a nominee relationship and the Trusts are subject to garnishment. *See Crimson Ventures & Consulting LLC v. United States*, No. 5:24-CV-018-H, 2024 WL 3841614, at *8 (N.D. Tex. Aug. 14, 2024) (finding nominee relationship where party had "very close relationship" with entity and made "personal use" of entity's funds).[20]

## C. The Remaining Objections

First, Defendants challenge the writ issued to Balentine as improper, arguing that Balentine does not have custody of the financial accounts in question (because the assets in those accounts are custodied

---

[19] *See* Def. Reis' Resp. 17, ECF No. 445; Def. Hockridge's Resp. 15, ECF No. 444.
[20] Because the Court finds that the Trusts are subject to garnishment under the nominee theory, the Court does not reach the Government's other arguments.

by the other garnishee, SEI).[21] But as the Government points out, "Balentine's answer states that its affiliate 'acts as the general partner' for certain partnerships in which the trusts are 'limited partners in private investment funds.'"[22] Because the FDCPA provides that the Government may garnish a partnership interest by naming "any partner other than the debtor" as the "garnishee on behalf of the partnership" the Court finds that the writ is proper as to Balentine. *See* § 3205(b)(2)(B).

Second, Hockridge argues that "the assets in the trusts now subject to garnishment are not proceeds of any crime."[23] But the origin of the assets to be garnished is not a statutory requirement under 18 U.S.C. § 3613(c) which creates a lien on "all property and rights to property" that Defendant possess. *See United States v. Ogbemudia*, 361 F. App'x 583, 583–84 (5th Cir. 2010) (noting government's efforts to enforce restitution order are "distinct from a forfeiture proceeding" and do not require tracing to the origin).

Finally, Hockridge also raises a collateral attack on the restitution order itself, alleging that it is "constitutionally infirm" because the Court imposed restitution "without any jury findings."[24] This argument is likewise misplaced. "It is well-settled that a defendant may not use a garnishment proceeding to challenge the underlying judgment and restitution order in [her] case." *United States v. Onyeri*, 996 F.3d 274, 281 (5th Cir. 2021). Accordingly, the Court overrules Defendants' objections.

### D. Defendant's Request for Hearing

Defendants request a hearing under § 3205(c)(5).[25] Defendants have not disputed the essential evidence that underpins the Court's finding of the Trusts' nominee status nor have Defendants indicated with specificity the evidence they would present at a hearing. Regardless, Defendants' request for a

---

[21] *See e.g.*, Def. Hockridge's Obj. 2, ECF No. 412.
[22] Gov.'s Cross-Mot. Garnishment 17–18, ECF No. 433 (quoting Balentine LLC's Answer 3, ECF No. 397).
[23] Def. Hockridge's Obj. SEI's Answer 6, ECF No. 424.
[24] Def. Hockridge's Obj. SEI's Answer 8, ECF No. 424.
[25] *See e.g.*, Def. Reis' Resp. 14, 21, ECF No. 445.

hearing is fatally deficient because none of the objections raised fall within the scope of § 3205(c)(5) triggering a mandatory hearing.

Though the Fifth Circuit has not directly addressed it, the plain language interpretation of § 3205(c)(5) indicates that a hearing under § 3205(c)(5) is warranted only where the objections filed are to an answer. *See e.g.*, § 3205(c)(5) ("[T]he judgment debtor . . . may file a written objection to the *answer*." (emphasis added)). Where, as here, Defendants' objections are to the writs of garnishment themselves, the objections do not fall "within the scope of § 3205(c)(5) triggering a mandatory hearing." *United States v. Ingleman*, No. 3:12-CV-1597-B, 2013 WL 12137733, at *3 (N.D. Tex. June 26, 2013).

Despite titling their filings as objections to the Garnishees' answers, all of Defendants' objections are attempts to attack the writs themselves.[26] To the extent Defendants direct their objections to the Garnishees' answers, they are agreeing—not objecting—to the contents of the answers.[27] At bottom, Defendants' objections are to the characterization of the Trusts' assets as garnishable property. But objections to the characterization of property "is not an objection to the garnishee's answer, but to the garnishment generally" and thus, do not trigger a hearing. *Id.* Accordingly, Defendants have not made an objection within the scope of § 3205(c)(5) that would trigger a mandatory hearing and their request for a hearing is **DENIED**.

## IV.   CONCLUSION

For the forgoing reasons, the Family Trustee's Petition to Modify the Writs of Garnishment (ECF No. 428) and Defendants' Claims for Exemption and Requests for Hearing (ECF Nos. 430, 431, 435) are **DENIED**. The Government's Cross-Motion for Final Order of Garnishment (ECF No. 433) is

---

[26] *See e.g.*, Def. Hockridge's Obj. Garnishee Balentine's Answer 3, ECF No. 412 ("To the extent the writs attempt to garnish the assets in the trusts, the writs exceed their permitted authority."); Def. Reis' Obj. Garnishee Balentine's Answer 4, ECF No. 418 ("The government provides no authority to support its claimed ability to garnish trust assets to satisfy a restitution judgment[.]").

[27] *See e.g.*, Def. Hockridge's Obj. Garnishee Balentine's Answer 2, ECF No. 412.

**GRANTED**. Any objection or argument not explicitly addressed herein would not have affected the Court's ruling and is overruled. The final order of garnishment will be docketed separately.

**SO ORDERED** this **28th day** of **April, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

11